No. 23-50312

# In the United States Court of Appeals for the Fifth Circuit

---

UNITED STATES OF AMERICA,
Plaintiff–Appellant,

v.

PAOLA CONNELLY,
Defendant–Appellee.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

---

**REPLY BRIEF FOR THE UNITED STATES**

---

JAIME ESPARZA
United States Attorney
Western District of Texas

ZACHARY RICHTER
Deputy Appellate Chief
Western District of Texas

NICOLE M. ARGENTIERI
Acting Assistant Attorney General

LISA H. MILLER
Deputy Assistant Attorney General

MAHOGANE D. REED
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 615-1170
mahogane.reed@usdoj.gov

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................ii

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 2

    I.    The District Court Erred by Holding That Section 922(g)(3) is Unconstitutional on its Face and As Applied to Connelly ......... 2

           A.    Section 922(g)(3) is constitutional on its face. ..................... 2

           B.    Section 922(g)(3) is constitutional as applied to Connelly. ............................................................................... 5

           C.    The government did not misstate the record. ...................... 8

    II.   The District Court Erred by Holding That Section 922(d)(3) is Unconstitutional on its Face. ............................................... 11

CONCLUSION ........................................................................................................ 14

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**

*Antonyuk v. Chiumento*,
  --- F.4th ---, 2023 WL 8518003 (2d Cir. Dec. 8, 2023) ............................... 3

*Clem v. Lomeli*,
  566 F.3d 1177 (9th Cir. 2009) ................................................................. 6

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ................................................................................ 8

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
  597 U.S. 1 (2022) ........................................................................... 2, 8, 13

*Range v. Att'y Gen.*,
  69 F.4th 96 (3d Cir. 2023) (en banc) ...................................................... 3

*State v. Shelby*,
  2 S.W. 468 (Mo. 1886) ............................................................................ 4

*United States v. Daniels*,
  77 F.4th 337 (5th Cir. 2023) ............................................................ passim

*United States v. Holden*,
  70 F.4th 1015 (7th Cir. 2023) ................................................................. 3

*United States v. Martinez*,
  263 F.3d 436 (5th Cir. 2001) ................................................................... 6

*United States v. Murray*,
  988 F.2d 518 (5th Cir. 1993) ................................................................ 12

*United States v. Rahimi*,
  61 F.4th 443 (5th Cir. 2023) ................................................................... 2

**Statutes**

18 U.S.C. § 922 ................................................................................. passim

## INTRODUCTION

The district court erred by holding that 18 U.S.C. § 922(g)(3)'s prohibition on the possession of firearms by unlawful drug users violates the Second Amendment on its face and as applied to Paola Connelly, who admitted to using marijuana "regular[ly]" while living in a house filled with firearms. Connelly cannot show that Section 922(g)(3) is unconstitutional in all its applications. And the facts of this case demonstrate that Section 922(g)(3) is constitutional as applied to her. Likewise, because 18 U.S.C. § 922(d)(3) is supported by the same historical tradition that justifies Section 922(g)(3), and because the facts as alleged justify Section 922(d)(3)'s application in this case, the district court erred in finding that statute facially unconstitutional.

Connelly summarily invokes "the current state of the law" (Resp. Br. 6) to defend the district court's judgment. But this Court's "narrow[]" decision in *United States v. Daniels*, 77 F.4th 337, 355 (5th Cir. 2023), does not establish that Section 922(g)(3) is unconstitutional as applied to Connelly, much less that the statute fails in all its applications. Connelly's contentions regarding the frequency of her drug use only underscore that the district court prematurely granted her as-applied challenge. And because Section 922(g)(3) and (d)(3) criminalize different conduct, the district court was wrong to find Section 922(d)(3) facially unconstitutional. This Court should reverse.

# ARGUMENT

**I.   The District Court Erred by Holding That Section 922(g)(3) is Unconstitutional on its Face and As Applied to Connelly.**

A.   Section 922(g)(3) is constitutional on its face.

Section 922(g)(3)'s prohibition on the possession of firearms by unlawful drug users is constitutional on its face. As this Court recognized in *Daniels*, "[t]hroughout American history, laws have regulated the combination of guns and intoxicating substances." 77 F.4th at 340. *Daniels* thus acknowledged that "history and tradition may support *some*" applications of Section 922(g)(3). *Id.* (emphasis added). And "emphasizing the narrowness of [its] holding," *Daniels* stressed that it did "not invalidate the statute in all its applications, but, importantly, only as applied to Daniels." *Id.* at 355.

Connelly reasons that to prevail on a facial challenge, she need only show that Section 922(g)(3) is inconsistent with the Second Amendment's text and historical understanding, not that there is no set of circumstances under which the statute would be invalid. Resp. Br. 7 (citing *United States v. Rahimi*, 61 F.4th 443, 453 (5th Cir. 2023), *petition for cert. granted*, 143 S. Ct. 2688 (argued Nov. 7, 2023)). But as the government explained in its opening brief (at 36-37), the Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), did not alter the standard for sustaining facial constitutional challenges to gun laws. Accordingly, multiple courts of appeals, including this one, have

either granted as-applied Second Amendment challenges without finding the challenged statute facially unconstitutional, *see* Gov't Opening Br. 36-37 (discussing *Daniels* and *Range v. Att'y Gen.*, 69 F.4th 96, 98 (3d Cir. 2023) (en banc)), or otherwise recognized and applied the prevailing standard for sustaining facial challenges in declining to find firearms provisions unconstitutional under the Second Amendment, *see, e.g.*, *United States v. Holden*, 70 F.4th 1015, 1017-18 (7th Cir. 2023) (explaining, in rejecting Second Amendment challenge to 18 U.S.C. § 922(n), that "except with respect to a law invalid in every possible application (or substantially overbroad with respect to speech), a statute's constitutionality must be assessed as applied"); *Antonyuk v. Chiumento*, --- F.4th ---, 2023 WL 8518003, at *23-24 (2d Cir. Dec. 8, 2023) (explaining, in the Second Amendment context, that a challenger must "establish that no set of circumstances exists under which the law would be valid, or show that the law lacks a plainly legitimate sweep," and rejecting the argument that "*Bruen* created an exception to the normal rules regarding facial and as-applied challenges") (brackets and quotation marks omitted).[1]

---

[1] Additionally, during oral arguments in *United States v. Rahimi*, No. 22-915, some of the Justices addressed whether the prevailing rule regarding facial challenges applies in the Second Amendment context. *See Rahimi* Oral Argument Trans. 42-43, 62, 63 (Justice Gorsuch noting that when determining whether a statute is facially constitutional, "we have to ask is it unconstitutional in all of its applications"); *id.* at 81-82 (Chief Justice Roberts noting the same).

Connelly does not attempt to demonstrate that Section 922(g)(3) is unconstitutional in all its applications. She instead contends that the government misreads *Daniels* "as having found that Section 922(g)(3) is not unconstitutional on its face," when in fact *Daniels*'s holding was limited to the "specific facts of [that] case." Response Br. 8.

As explained in the opening brief (at 17), *Daniels* did not explicitly hold that Section 922(g)(3) is constitutional on its face. But several aspects of the Court's "narrow[]" decision indicate that Section 922(g)(3) remains constitutional in at least some of its applications. *Daniels*, 77 F.4th at 355; *see also* Gov't Opening Br. 17-30. *Daniels* observed that, "[t]hroughout American history, laws have regulated the combination of guns and intoxicating substances," 77 F.4th at 340, and explained that a "ban on intoxicated carry" was "'in perfect harmony with the constitution,'" *id.* at 347 (quoting *State v. Shelby*, 2 S.W. 468, 469 (Mo. 1886)). And it suggested that the government could disarm someone who uses drugs that "were so powerful that anyone who uses them is permanently impaired in a way that is comparable to ongoing mental illness," who uses drugs "so regular[ly] and so heav[ily] that he was continually impaired," or who "has a history of drug-related violence." *Id.* at 350, 354. Although it did not definitively resolve the question of Section 922(g)(3)'s facial

4

constitutionality, *Daniels* indicated that the statute can be constitutionally applied in some circumstances. *Id.* at 340.

As the government explained in its opening brief, the historical record authorizes disarming certain defendants, including Connelly, under Section 922(g)(3) without offending the Second Amendment. Gov't Opening Br. 17-30. Connelly made no attempt to rebut that showing. This Court should reverse the district court's contrary judgment.

B.  <u>Section 922(g)(3) is constitutional as applied to Connelly.</u>

The district court likewise erred by concluding that Section 922(g)(3) is unconstitutional as applied to Connelly. As the opening brief explains (at 30-31), the facts alleged in the criminal complaint—that Connelly, who admitted to using marijuana on a "regular basis," had drugs and drug paraphernalia inside her home alongside nearly a dozen firearms that were openly scattered throughout her house, ROA.16-17—support the reasonable inference that Connelly possessed firearms while "presently under the influence" of unlawful controlled substances. *Daniels*, 77 F.4th at 348 (emphasis omitted); *see also id.* at 345-48.

Connelly contends (Resp. Br. 6) that "since there was no evidence of Ms. Connelly's intoxication," she need not "respond to th[e] argument" that there is "historical support for disarming a person who is presently intoxicated." But

5

Connelly herself admitted that she used unlawful drugs on a "regular basis." ROA.16. That admission, combined with the presence of drugs on her nightstand and a handgun tucked between her bed and nightstand, ROA.17, 260, supports the strong inference that she possessed the firearms while under the influence of illegal drugs. The allegations in the criminal complaint indicate that the government can prove as much at trial. By refusing to address the issue at all, Connelly has waived any argument to the contrary. *See, e.g.*, *United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001) ("Generally speaking, a [party] waives an issue if he fails to adequately brief it."); *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (holding that appellee who did not address an argument in its answering brief had waived any argument on that issue).

At a minimum, Connelly's reliance on a lack of "evidence" that she was "presently intoxicated" supports the government's alternative argument that the district court erred by granting Connelly's as-applied challenge on a motion to dismiss, rather than after a full trial on the merits, and that this Court should remand for further factual development. *See* Gov't Opening Br. 32-33.

Connelly contends that further factual development is not necessary, Resp. Br. 11, and that the facts of this case are like those in *Daniels* and therefore warrant a similar outcome, Resp. Br. 8-9. But the allegations in this case are not like the facts in *Daniels*, where the only evidence of Daniels's drug possession

6

was the presence of "marihuana cigarette butts in [an] ashtray" in his car on the day of his firearm possession, and where the government established that the defendant used marijuana "'approximately fourteen days out of a month.'"[2] *Daniels*, 77 F.4th at 340. Here, the government alleges that Connelly was found in possession of various drugs throughout her home (including on her nightstand and under her side of the bed), admitted to using marijuana on "a regular basis to sleep," and had a firearm between the bed and her nightstand. ROA.16, 260, 273. These allegations strongly support an inference that Connelly used marijuana (and possibly other illegal drugs) *while possessing firearms*. This contrasts with *Daniels*, where even a full trial on the merits elicited "no evidence that Daniels was intoxicated at the time he was found with a gun." *Daniels*, 77 F.4th at 348. In any case, unlike in *Daniels*, the government here has not had the opportunity to *prove* the extent of Connelly's drug use because the district court granted her as-applied challenge before the case went to trial. *See* Gov't Opening Br. 32.

Finally, Connelly contends that she is more entitled to relief than the defendant in *Daniels* because she possessed firearms in her home, whereas

---

[2] The government maintains that Section 922(g)(3) is constitutional in all its applications and that *Daniels* was wrongly decided. *See* Gov't Opening Br. 16-17.

Daniels possessed a firearm in his car. Resp Br. 9 (citing *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008)). As mentioned above, however, the fact that she possessed firearms in her home, alongside various drugs, creates a stronger inference that she possessed firearms while "actively intoxicated." *Daniels*, 77 F.4th at 347. In any event, Connelly's contention conflicts with the Supreme Court's directive. Although *Heller* and *Bruen* acknowledge "that the need for armed self-defense is perhaps 'most acute' in the home," *Bruen*, 597 U.S. at 33 (quoting *Heller*, 554 U.S. at 628), the Court explicitly rejected the notion that the Second Amendment "draws a home/public distinction with respect to the right to keep and bear arms*," id.* at 32. And the Court categorically disclaimed an analytical framework that applied more scrutiny to laws implicating the right to "self-defense in the home" than it did other laws. *Id.* at 18-19. Rather, the Court adopted a single test for assessing the constitutionality of firearms laws: whether the law is "consistent with the Nation's historical tradition of firearm regulation." *Id*. at 24. As the government explained in its opening brief (at 17-26, 30-31), Section 922(g)(3) meets that standard, particularly as applied to Connelly.

C. <u>The government did not misstate the record.</u>

Connelly devotes a substantial portion of her response (Resp. Br. 2-4) to contending that the government misrepresented various material facts and

8

"misstated the district court's factual findings." Resp. Br. 8. That is incorrect. The government's factual representations are supported by the record, and the inferences drawn from those facts were not improper.

  i. Connelly contends that the government misleadingly characterized the plant pots in her house as a "marijuana greenhouse." Resp. Br. 3-4 (citing Gov't Opening Br. 30). But the government's opening brief explained that officers found "what *appeared to be* a homemade marijuana greenhouse" in Connelly's home. Gov't Opening Br. 4 (emphasis added). And as Connelly acknowledges (Resp. Br. 4), the government's characterization of the grow operation as a "marijuana greenhouse" comes directly from the criminal complaint. *See* ROA.16. The government's characterization is also supported by the ATF agent's testimony at Connelly's detention hearing that officers found an "indoor grow operation" consisting of an "[e]nclosed plastic area in one of the bedrooms with ventilation in different potted plants inside the plastic enclosure." ROA.259-260. Connelly points out that the greenhouse "had no plants at all," Resp. Br. 4, but the agent nevertheless identified it as "a small grow op" in which the plants "were dead or not growing yet" at the time of the search. ROA.271-272. The opening brief's treatment of the suspected marijuana greenhouse was therefore not misleading.

ii. Connelly also argues (Resp. Br. 4) that the government misleadingly characterized the suspected psylocibin (hallucinogenic mushrooms) found in her kitchen as confirmed psylocibin. But the government's opening brief explained that the psylocibin was "still undergoing testing" or "'still being tested'" at the time of the detention hearing. Gov't Opening Brief 33-34 (quoting ROA.259-261). The government therefore did not misstate the evidence regarding the seized psylocibin.

iii. Connelly further disputes the government's characterization of her marijuana use as "daily" or "'every day,'" *see* Gov't Opening Br. 1, 31, contending that the record at most indicates that she used marijuana on a "'regular basis.'" Resp. Br. 3. Connelly is correct that the criminal complaint itself indicates only that her use was "regular." Accordingly, the opening brief repeatedly used that term to characterize Connelly's marijuana use. *See* Opening Br. 5, 11, 30-31, 33-34. The government's references to "daily" or "every day" use echoed its argument at Connelly's detention hearing—made without objection or correction from defense counsel—that she admitted to using marijuana "every day to put herself to sleep." ROA.279. For that reason, the government's opening brief referred to "the government's allegations" regarding Connelly's "every day" use in the argument section only, Gov't Opening Br. 31,

10

not in the factual background section. The government's characterization of Connelly's drug use is thus supported by the record.

Connelly's factual contentions only underscore that the district court ruled on her as-applied challenge to Section 922(g)(3) prematurely. The question whether "doing something regularly is . . . the same as doing something daily" (Resp. Br. 3 n.2) in the context of this case is a factual question that warranted additional proceedings. As the government explained in its opening brief (at 31-32), should this Court disagree with the government that the facts as alleged overcome Connelly's as-applied challenge, the Court should remand for further factual development.

## II. The District Court Erred by Holding That Section 922(d)(3) is Unconstitutional on its Face.

Finally, the district court erred by concluding that Section 922(d)(3), which prohibits, among other things, the "dispos[al] of" firearms to unlawful users of controlled substances, violates the Second Amendment on its face. ROA.239-245. As the government explained in its opening brief (at 35-37), the district court's first error was reaching Connelly's facial challenge to Section 922(d)(3) at all, where the court acknowledged that the facts—that Connelly's husband ingested "crack cocaine" and "mushrooms" before shooting through their neighbor's front door, ROA.16, 67, 266–undermined Connelly's as-applied challenge to that statute. ROA.244. That error aside, Section 922(d)(3) is facially

11

constitutional for the same reasons as Section 922(g)(3), *see* Gov't Opening Br. 37-38, and is constitutional as applied to Connelly, *see* Gov't Opening Br. 38-39.

Connelly echoes the district court's conclusion that enforcing Section 922(d)(3) in this case would "'create an end-run around'" the district court's holding that Section 922(g)(3) is unconstitutional and that the court "was bound to similarly find Section 922(d)(3) unconstitutional." Resp. Br. 10 (quoting ROA.242). But Section 922(d)(3), which criminalizes "*dispos[ing] of*" a firearm to an unlawful drug user, punishes completely different behavior than Section 922(g)(3), which prohibits *possessing* a firearm that has travelled in interstate commerce as an unlawful user. *Cf. United States v. Murray*, 988 F.2d 518, 522 (5th Cir. 1993) (explaining in the context of another subsection of 922(d) that "it is the *purchaser's* [unlawful] status . . . which makes the activity criminal") (emphasis added). And in the context of this case, the two statutes were charged based on different conduct: the Section 922(g)(3) charge was based on Connelly's own unlawful possession as an unlawful drug user, and the Section 922(d)(3) charge was based on Connelly's transfer of firearms to her husband, who is also an unlawful drug user. ROA.79-81.

Finally, Connelly contends (Resp. Br. 10) that this Court should affirm the district court's holding because "the firearms were merely present in the marital home" and "Ms. Connelly merely failed to prevent her husband from

accessing the firearms." According to Connelly, a contrary conclusion would "impair[] Ms. Connelly's own Second Amendment rights in her home." *Ibid*. But as explained above, *see supra* p. 8, the core question is not whether the regulation impairs Connelly's right to possess a firearm in her home. It is instead whether Section 922(d)(3) is consistent with our nation's history and tradition of firearm regulation. *Bruen*, 597 U.S. at 19. For reasons explained in the government's opening brief (at 37-38), it is. The district court erred in finding Section 922(d)(3) unconstitutional on its face.[3]

---

[3] Connelly correctly spots (Resp. Br. 9) a misstatement in the government's opening brief suggesting that the district court granted Connelly's as-applied challenge to Section 922(d)(3). As the government explained throughout its opening brief (at 34-37), the district court bypassed Connelly's as-applied challenge to find Section 922(d)(3) unconstitutional on its face. For the reasons explained in the government's opening brief, the district court erred by finding Section 922(d)(3) unconstitutional on its face, and given the alleged facts, this Court should reject any argument that Section 922(d)(3) is unconstitutional as applied to Connelly.

# CONCLUSION

This Court should reverse the district court's judgment or, alternatively, vacate and remand for additional proceedings.

Respectfully submitted,

| | |
|---|---|
| JAIME ESPARZA<br>United States Attorney<br>Western District of Texas | NICOLE M. ARGENTIERI<br>Acting Assistant Attorney General |
| | LISA H. MILLER<br>Deputy Assistant Attorney General |
| ZACHARY RICHTER<br>Deputy Appellate Chief<br>Western District of Texas | /s/ Mahogane D. Reed<br>MAHOGANE D. REED<br>Attorney, Appellate Section<br>Criminal Division<br>U.S. Department of Justice<br>950 Pennsylvania Ave., N.W.<br>Washington, DC 20530<br>(202) 615-1170<br>mahogane.reed@usdoj.gov |

January 9, 2024

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 2,905 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Calisto MT 14-point font.

/s/ Mahogane D. Reed
MAHOGANE D. REED