

U.S. Department of Justice

Criminal Division

*950 Pennsylvania Avenue N.W., Room 1252*
*Washington, DC 20530-0001*
*Tel: (202) 307-1982*

June 28, 2024

**VIA CM/ECF**

Mr. Lyle W. Cayce, Clerk
Office of the Clerk
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130

    Re:   *United States v. Paola Connelly*, No. 23-50312
           Supplemental Letter Brief for the United States

Dear Mr. Cayce,

      The government submits this supplemental letter brief in response to the Court's June 21, 2024, order directing the parties to address the applicability of the Supreme Court's decision in *United States v. Rahimi*, No. 22-915, 2024 WL 3074728 (June 21, 2024), to this case. In *Rahimi*, the Supreme Court held that 18 U.S.C. § 922(g)(8), which prohibits firearm possession by an individual who is subject to a domestic violence restraining order, does not violate the Second Amendment on its face or as applied to the defendant in that case. *Rahimi*'s reasoning supports the government's position that 18 U.S.C. §§ 922(g)(3) and (d)(3), which prohibit an individual from possessing a firearm as, or from "sell[ing] or otherwise dispos[ing] of" a firearm to, an unlawful user of any controlled substance, comport with the Second Amendment. History supports the government's authority to disarm categories of persons whose firearm possession would endanger themselves or others. Consistent with that principle, Congress may temporarily disarm unlawful users of controlled substances during periods of active drug use, when they present a special danger of firearm misuse. *Rahimi* undermines much of the district court's reasoning, which found Sections 922(g)(3) and (d)(3) facially unconstitutional based on this Court's panel opinion in *United States v. Rahimi*, 61 F.4th 443 (5th Cir 2023), *rev'd*, 2024 WL 3074728 (June 21, 2024). The Supreme Court's decision in *Rahimi* also is in tension with this Court's opinion in *United*

*States v. Daniels*, 77 F.4th 337 (5th Cir. 2023), *cert. petition filed*, No. 23-376 (Oct. 5, 2023), which made some of the very methodological errors that *Rahimi* corrected to find Section 922(g)(3) unconstitutional as applied to a marijuana user. The district court's judgment should be reversed.

### I. The Supreme Court's Decision in *Rahimi* Clarified the Analytical Framework Governing Second Amendment Challenges.

In *Rahimi*, the Supreme Court upheld Section 922(g)(8) under the Second Amendment. The Court explained that "[s]ince the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." 2024 WL 3074728, at *5. Those provisions include surety laws, which authorized magistrates to "require individuals suspected of future misbehavior to post a bond," and going armed laws, which "provided a mechanism for punishing those who had menaced others with firearms." *Id*. at *8-*9. The court concluded that "[t]aken together, the surety and going armed laws confirm" that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id*. at *9. The Court acknowledged that "Section 922(g)(8) is by no means identical to these founding era regimes," but it explained that "it does not need to be": Section 922(g)(8)'s "prohibition on the possession of firearms by those found by a court to present a threat to others fits neatly within the tradition the surety and going armed laws represent." *Id*.

In reaching its decision, the Court clarified that its Second Amendment precedents do not demand "a law trapped in amber"; the Second Amendment "permits more than just those regulations identical to ones that could be found in 1791." *Id*. at *6. As Justice Barrett emphasized in concurrence, "imposing a test that demands overly specific analogues has serious problems," including "forc[ing] 21st-century regulations to follow late-18th-century policy choices," and "assum[ing] that founding-era legislatures maximally exercised their power to regulate." *Id*. at *30 (Barrett, J., concurring).

Accordingly, the Court explained that, when assessing whether a law complies with the Second Amendment, courts should consider "whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition" by ascertaining "whether the new law is 'relevantly similar' to laws that our tradition is understood to permit." *Id*. (emphasis added). Under this standard, "if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id*. But even "when a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster,'" so long as the law "comport[s] with the principles underlying the Second Amendment." *Id*.

## II. *Rahimi* Supports the Government's Position that Sections 922(g)(3) and (d)(3) are Consistent With History and Tradition.

*Rahimi* supports the government's position that Sections 922(g)(3) and (d)(3) are consistent with our "historical tradition of firearm regulation." *NYSRPA v. Bruen*, 597 U.S. 1, 17 (2022); *see* Gov't Opening Br. 17-26, 37-38. Both statutes are consistent with the historically rooted principle that governments may disarm categories of persons whose possession of a firearm would endanger themselves or others. Accordingly, an unlawful user of controlled substances may be temporarily disarmed so long as she misuses illegal drugs.

Three longstanding regimes support the government's authority to disarm those whose unlawful use of illegal intoxicants presents a heightened risk of harm to themselves or others: historical laws regulating firearm possession and use by those under the influence of alcohol, historical practices disarming categories of individuals whose firearm possession presented a special danger to themselves or others, and historical restrictions on firearm possession by the mentally ill. Gov't Opening Br. 18-26; *see also Rahimi*, 2024 WL 3074728, at *5 (explaining that at the founding legislatures adopted a "rang[e]" of regulations, including restrictions on gun use by drunken New Year's Eve revelers"); Gov't Supp. Br. 6-10, *United States v. Harris*, No. 21-3031 (3d Cir. filed Nov. 15, 2023) (discussing restrictions on the mentally ill in more detail). "Taken together," these regulatory regimes and historical restrictions are "relevantly similar" to Sections 922(g)(3) and (d)(3). *Rahimi*, 2024 WL 3074728, at *9. They impose a similar restriction: a temporary ban on firearm possession by individuals during periods when they present a special risk of harm to themselves and others. And they do so for the similar reason that firearms present a unique danger when in proximity to intoxicants. *See Smith v. United States*, 508 U.S. 223, 240 (1993) ("[D]rugs and guns are a dangerous combination.").

It does not matter that Sections 922(g)(3) and (d)(3) are not "identical to these founding era regimes," because they "do[] not need to be." *Rahimi*, 2024 WL 3074728, at *9. Their temporary prohibition on the possession of firearms by, and transfer of firearms to, unlawful drug users fits neatly within the tradition of keeping firearms out of the hands of the intoxicated, those who threaten others, and the mentally ill. *See ibid*.

## III. *Rahimi* Undermines Connelly's and the District Court's Logic.

In reaching a contrary conclusion, the district court committed the very errors that *Rahimi* addressed. *Rahimi*'s reasoning directly undermines the district court's determination that Sections 922(g)(3) and (d)(3) are unconstitutional on their face as well as its rejection of the historical principles that justify those statutes.

A. *Rahimi* directly rebuts the district court's determination that, because Sections 922(g)(3) and (d)(3) may be unconstitutional in some hypothetical

3

circumstances, they are facially unconstitutional. *See* ROA.227 (explaining that Section 922(g)(3) is unconstitutional because it prohibits a hypothetical "individual[] who [has] used drugs sometime in the last year from owning and keeping a firearm"); *see also* ROA.244 (adopting the *Rahimi* panel opinion's standard for facial challenges); Connelly Resp. Br. 7, 10 (adopting the district court's reasoning). As the Supreme Court explained, when a defendant presses a facial challenge, the question is not whether the challenged regulation "might raise constitutional concerns" in some "hypothetical scenarios." *Rahimi*, 2024 WL 3074728, at *6. Rather, the question is whether the defendant has "establish[ed] that no set of circumstances exists under which the Act would be valid." *Id*. (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Sections 922(g)(3) and (d)(3) are undoubtedly constitutional in at least *some* of their applications. *See* Gov't Opening Br. 17-26.

At a minimum, the government may prohibit firearm possession by individuals who are actively intoxicated, who have a history of drug-related violence, or whose drug use renders them continually impaired. *Id*.; *see also United States v. Veasley*, 98 F.4th 906, 918 (8th Cir. 2024) (upholding Section 922(g)(3) against a facial Second Amendment challenge). Indeed, the district court recognized as much in its order denying John Connelly's motion to dismiss because he did not show that Section 922(g)(3) is unconstitutional in all of its applications. *United States v. Connelly*, No. 22-CR-229, 2024 WL 1460762, *3 (W.D. Tex. Apr. 2, 2024). That decision is irreconcilable with the district court's conclusion here.

Furthermore, while Section 922(g)(3) is not constitutionally confined to cases where defendants possess firearms while actively intoxicated, Section 922(g)(3) is constitutional as applied to Connelly because the facts as alleged in the criminal complaint support the common-sense inference that Connelly possessed firearms while under the influence of marijuana. Gov't Opening Br. 30-31.[1] And the district court acknowledged that Section 922(d)(3) is likely constitutional as applied to

---

[1] Since filing its briefs in this appeal, the government has learned that the suspected psylocibin found in Connelly's home was not confirmed to be psylocibin. *See* Gov't Opening Br. 33-34. However, the government maintains that Connelly's admittedly "regular" marijuana use rendered her an "unlawful user" of a controlled substance. The Section 922(g)(3) charge was therefore proper on the face of the indictment, and the district court improperly (and prematurely) considered and granted her as-applied challenge. *Id*. at 30-34. Should this Court have any doubt, and should it consider the fact of Connelly's active intoxication relevant, it should vacate the district Court's judgment and remand for further factual development regarding the extent of Connelly's marijuana use, which the parties dispute. Gov't Opening Br. 31-34; *see United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).

Connelly, who provided firearms to John Connelly while he was under the influence of cocaine, resulting in John shooting into their neighbor's front door. ROA.244. Connelly's facial challenge thus fails.

    B.    *Rahimi* also undermines the district court's determination that the historical analogues for Sections 922(g)(3) and (d)(3) were not sufficiently similar to place those provisions within our historical tradition. For example, the district court believed that because historical intoxication laws had a narrower scope than Section 922(g)(3), they were not sufficiently similar to the modern statute. ROA.226-230, 231-232. And the district court discounted the government's "dangerousness" analogues because they "differed slightly in their justifications" and lacked "criminal safeguards" or some other pre-deprivation process.[2] ROA.237-238. But *Rahimi* emphasized that "a 'historical twin' is not required." *Rahimi*, 2024 WL 3074728, at *10 (emphasis omitted); *see also id*. at *11. A law need only "comport with the principles underlying the Second Amendment" to be permissible. *Id*. at *6. For the reasons explained above, *see supra* p. 3, Sections 922(g)(3) and (d)(3) fully comport with the historically derived principles underlying the Second Amendment.

    In any event, the district court failed to appreciate the obvious reason for any difference in the scope of historical intoxication laws and Section 922(g)(3): historical intoxication statutes regulated firearm possession and use by individuals who consumed alcohol, which has been a legal substance for much of our nation's history, while Section 922(g)(3) regulates firearm possession by individuals who *unlawfully use illegal drugs*. The uniquely modern phenomenon of widespread illegal drug use, and the attendant potential for drug-induced harm or drug-related violence, thus justifies a temporary ban on the possession of firearms by, and transfer of firearms to, unlawful users of controlled substances. *Rahimi*, 2024 WL 3074728, at *1 (directing courts to "apply[] faithfully the balance struck by the founding generation to *modern circumstances*") (emphasis added); *see also* Petition for Writ of Certiorari 7-12, *United States v. Daniels*, No. 23-376 (filed Oct. 5, 2023).

    C.    *Rahimi*'s reasoning is irreconcilable with the district court's approach of considering each of the government's historical analogues in isolation. *See* ROA.226-239. *Rahimi* teaches that courts should ask what principles the government's historical analogues demonstrate when "[t]aken together." *Rahimi*, 2024 WL 3074728, at *9. Collectively, the government's historical analogues are consistent with the principle that the government may temporarily prohibit firearm possession by, or firearm transfer to, individuals whose unlawful use of intoxicating

---

[2] As in *Rahimi*, Connelly has not raised a procedural due process challenge to Section 922(g)(3). 2024 WL 3074728, at *11 n.2. This Court thus need not address any due process concern.

substances renders them more likely than the average person to present a danger if armed.

D. Finally, *Rahimi* refutes Connelly's and the district court's contention that because Section 922(g)(3) prohibits unlawful drug users "from owning and keeping a firearm in their homes for self-defense," it is at odds with the Second Amendment. ROA.227; Connelly Resp. Br. 9. *Rahimi* explained that the Supreme Court's precedents "never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home." *Rahimi*, 2024 WL 3074728, at *10; *see also* Gov't Reply Br. 8. So long as the regulation is consistent with the principles underlying the Second Amendment, any attendant prohibition on the possession of firearms in the home is permissible. *See Bruen*, 597 U.S. at 30. Section 922(g)(3)'s temporary prohibition on firearm possession is thus fully consistent with the Second Amendment.

**IV. *Rahimi* Undermines This Court's Decision in *Daniels*.**

Finally, this Court's decision in *Daniels*, which held that Section 922(g)(3) is unconstitutional as applied to a regular marijuana user, is in tension with *Rahimi*. *Daniels* drew its analytical approach from the now-reversed panel opinion in *Rahimi* and consequently incorporated many of the methodological flaws that the Supreme Court identified in reversing that panel opinion. *See Daniels*, 77 F.4th at 344-55. For example, although *Daniels* correctly determined that the government need only identify "relevantly similar" historical analogues to justify Section 922(g)(3), *id*. at 343-44, it faulted the government for failing to identify a founding-era statute that prohibited firearm possession between periods of active intoxication, *id*. at 345-46, 347-48. This approach conflicts with *Rahimi*'s focus on using historical context to identify a "principle that underpins the Second Amendment," and effectively demands a "historical twin" of the sort that *Bruen* and *Rahimi* disclaimed. *Rahimi*, 2024 WL 3074728, at *6. It also fails to account for the dispositive distinction between lawful alcohol use that preoccupied the founders and the widespread unlawful use of controlled substances, unprecedented at the founding, that Section 922(g)(3) addresses. *See supra* p. 5. For these and other reasons, the government maintains that *Daniels* was wrongly decided and has petitioned the Supreme Court for review. As of the date of this filing, the government's petition remains pending.

In any event, the reasoning in *Daniels* supports the government's position that Section 922(g)(3) is constitutional in at least *some* of its applications and is therefore constitutional on its face. *See* Gov't Opening Br. 17-30; Gov't Reply Br. 2-5; *see also Veasley*, 98 F.4th at 918. Thus, even under *Daniels*, the district court's contrary determination was wrong.

For the foregoing reasons, and those detailed in the government's briefs, the district court's judgment should be reversed.

Respectfully submitted,

| | |
|---|---|
| JAIME ESPARZA<br>United States Attorney | NICOLE M. ARGENTIERI<br>Principal Deputy Assistant Attorney General |
| ZACHARY RICHTER<br>Deputy Appellate Chief<br>Western District of Texas | LISA H. MILLER<br>Deputy Assistant Attorney General |

/s/ Mahogane D. Reed
MAHOGANE D. REED
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 615-1170
mahogane.reed@usdoj.gov

# CERTIFICATE OF COMPLIANCE

1. This letter complies with the Court's June 21, 2024, order because it does not exceed six pages.

2. This letter complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced, 14-point serif typeface using Times New Roman.

*/s/ Mahogane D. Reed*
Mahogane D. Reed

# CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2024, I electronically filed the foregoing with the Clerk of the Court of the U.S. Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

*/s/ Mahogane D. Reed*
Mahogane D. Reed