

# STILLINGER & GODINEZ
## ATTORNEYS AT LAW, PLLC

**MARY STILLINGER**
*Licensed in Texas and New Mexico*
*Board Certified in Criminal Law*
*by the Texas Board of Legal Specialization*

**KATHERINE M. GODINEZ**
*Licensed in Texas and Arizona*

**BERNARD J. PANETTA**
*Licensed in Texas & District of Columbia*
*Of Counsel*

June 28, 2024

Mr. Lyle W. Cayce
Clerk of the Court
United States Court of Appeals for the Fifth Circuit
600 South Maestri Place
New Orleans, Louisiana  70130

    Re:  United States v. Paola Connelly
        Case No. 23-50312

Dear Mr. Cayce:

The Supreme Court's decision in *United States v. Rahimi*, 602 U.S. ___ (2024), set out an analysis and framework for a Second Amendment challenge to a criminal statute.  That analysis and framework support Ms. Connelly's argument that the statutes under which she was charged, 18 U.S.C. § 922(g)(3) and 922(d)(3), are unconstitutional, as an unjustified restriction of her Second Amendment rights.  Pursuant to the Court's directive of June 21, 2024, counsel files this letter brief to address the application of the *Rahimi* decision to this case.

*Rahimi* considered 18 U.S.C. § 922(g)(8), which prohibits the possession of a firearm by someone who is the subject of a protective order that includes a finding that the person "represents a credible threat to the physical safety of [another person]."  In finding this restriction constitutional, the Court's decision was narrowly drawn to address this specific statute and the facts of the case.  However, there are principles in the analysis that provide guidance for the analysis of other statutes that prohibit the possession of firearms.

EL PASO
401 Boston Ave., El Paso, TX 79902
P: (915) 775-0705

DALLAS
2619 Hibernia St., Dallas, TX 75204
P: (214) 432-0405

stillingerlaw@sbcglobal.net
www.stillingergodinez.com

In *Rahimi*, the Court gave some direction in how to conduct the historical analysis required by *New York State Rifle & Pistol Assn., Inc., v. Bruen*, 597 U.S. 1 (2022). In *Bruen*, the Court directed lower courts to examine the "historical tradition of firearm regulation" to determine whether a regulation that restricted Second Amendment rights was justified. Since then, there has been some variety in the ways that courts have conducted that analysis and the extent to which they have required that a current regulatory scheme be based on a similar restriction in place in Colonial times.

In *Rahimi*, the Court clarified that the question a court should answer is whether the challenged regulation is consistent with the principles underlying the accepted regulation of firearms at the time the Second Amendment was adopted. This inquiry provides an understanding of the intended breadth of the Second Amendment and what was understood to be an acceptable restriction of one's rights under the Second Amendment. Importantly, the Court explained that when reviewing historical firearms regulations, a court need not find a "historical twin" to validate a current regulation, but rather a "historical analogue." Slip Op. at 11.

This guidance, while helpful, does not change Ms. Connelly's analysis of the statutes involved in her case. She did not argue, nor did the district court base its decision on a lack of a "historical twin" to either of the involved statutes. The district court sought an analogue. However, the district court "rejected the government's analogy to historic laws prohibiting firearm possession or carry by intoxicated individuals, explaining its view that Section 922(g)(3) 'breaks with' those laws 'by prohibiting not just firearm use by those who are actively intoxicated but also firearm possession by those who use controlled substances, even somewhat irregularly.'" Appellant's Opening Brief at 8, citing ROA.239 and ROA.226–32. Further, the district court "rejected the government's analogy to laws disarming those deemed dangerous, explaining that those laws 'differed slightly in their justifications from § 922(g)(3)' and 'differed from § 922(g)(3) in how they disarmed individuals.'" Appellant's Opening Brief at 8–9, citing ROA.237.

The government's argument remains, therefore, that historical restrictions on the possession of firearms by intoxicated persons are sufficiently analogous to the current prohibition on possession by a person who is a user of an intoxicating substance. This issue is discussed at length in *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023). The analysis performed by this Court in *Daniels* remains

2

valid under *Rahimi,* because *Daniels* looked for an analogous regulation, not a twin.

*Rahimi* directs a court to find the principle underlying a historical restriction of the right to possess firearms. With respect to restrictions placed on an intoxicated person, the underlying principle is to protect the community from those that might use a firearm to harm or threaten others. In this case the government states, without further explanation, that "the Founding generation recognized that those who regularly became intoxicated threatened the social and political order." Appellant's Brief at 18. However, this Court in *Daniels* specifically considered whether marijuana users were more like "British Loyalists during the Revolution" or "repeat alcohol users," finding that the "answer is surely the latter." 77 F.4th at 355.

Having found that marijuana users were most analogous to alcoholics, the Court went on to examine colonial restrictions on the possession of firearms by alcoholics. This Court in *Daniels* found that the Founding Fathers "left ordinary drunkards unregulated," noting that "[t]he government has no meaningful response to the fact that neither Congress nor the states disarmed alcoholics, the group most closely analogous to marihuana users in the 18th and 19th centuries."[1] 77 F.4th at 354–55.

As noted in the briefs in this case, the *Daniels* court found § 922(g)(3) unconstitutional as applied, and did not rule on its facial constitutionality. *Rahimi* also rested on unconstitutionality as applied, rather than a facial analysis. But the *Rahimi* court criticized the Fifth Circuit's facial constitutionality analysis, because it "focused on hypothetical scenarios where [the statute] might raise constitutional concerns," rather than the circumstances where it was "most likely to be constitutional." Slip Op. at 11.

Clearly, § 922(g)(3) is unconstitutional as applied in Ms. Connelly's case. However, the Court should also find, as the district court did, that it is unconstitutional on its face. The statute has no requirement of intoxication, nor daily use, nor use of a substance that has any particular effect. The fact that the statute applies to a person who is an "unlawful user of or addicted to any controlled substance" reinforces the fact that the user prong of the statute does not require

---

[1] Ms. Connelly would not concede that a marijuana user would pose the same potential threat as a chronic drunk.

daily or continuous use. Even following *Rahimi's* directive to "seek harmony" where there may be conflict with constitutional protections, there is not a scenario where a person who has simply used (distinct from being addicted to) an illegal drug should lose his or her Second Amendment rights. Therefore, this Court should find § 922(g)(3) unconstitutional on its face.

Another important aspect of the Court's decision in *Rahimi* for Ms. Connelly is the Court's finding that it would not deny a person her Second Amendment rights based on the assertion that she was not a "responsible" person. Slip Op. at 11.[2] As the district court noted, "if Rahimi can claim the Second Amendment's protection, then Connelly can as well." ROA.223. Now that the Supreme Court has confirmed that Rahimi was entitled to Second Amendment protection, it cannot be disputed that Ms. Connelly is similarly entitled.

Although this letter refers simply to the § 922(g)(3) violation, for the reasons stated by the district court and in Appellee's Brief, the § 922(d)(3) violation falls under the same reasoning.

For these reasons and those set out in Appellee's prior briefing, this Court should affirm the judgment of the district court.

                                        Respectfully submitted,

                              By: /s/ Mary Stillinger
                                  Mary Stillinger
                                  STILLINGER & GODINEZ, PLLC
                                  Texas Bar No. 19239500
                                  401 Boston Avenue
                                  El Paso, Texas 79902
                                  (915) 775-0705
                                  stillingergodinez@sglawpllc.net

---

[2] At oral argument, the government said that it was not invoking the "law-abiding" prong of its proposed rule for individuals subject to § 922(g)(8)(C)(i). *See* Tr. of Oral Arg. 8–9, *United States v. Rahimi*, No. 22-915 (U.S. Nov. 7, 2023). So the majority opinion discussed only the "responsible" prong. *Rahimi*, slip op. at 17. In his dissenting opinion, Justice Thomas—who agreed with the majority in rejecting the government's theory—provided a more robust analysis discussing both prongs. *Id.* at 27–31 (Thomas, J., dissenting).

## CERTIFICATE OF SERVICE

      I hereby certify that on this 28th day of June, 2024, I electronically filed the foregoing Appellant's Brief with the Clerk of the Court using the CM/ECF system which will send notification to the following:

Assistant United States Attorney,
Mahogane D. Reed

                                         By: s/ Mary Stillinger
                                             MARY STILLINGER